902 F.2d 33
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mitchell MILLS, Petitioner,
v.
ISLAND CREEK COAL COMPANY; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 89-3438.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1990.
 
 Before RALPH B. GUY, Jr., and BOGGS, Circuit Judges; and PAUL V. GADOLA, District Judge.*
 PER CURIAM.
 
 
 1
 Claimant, Mitchell E. Mills, appeals the decision of the Benefits Review Board (Board) denying him benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901, et seq. Proceeding pro se, the claimant asserts that the evidence supports his claim of disability due to pneumoconiosis. Finding that the decision of the administrative law judge (ALJ) is supported by substantial evidence, we affirm.
 
 I.
 
 2
 The miner was born on February 19, 1922, and he worked as a coal miner within the meaning of 30 U.S.C. Sec. 902(d) and 20 C.F.R. Sec. 725.202 for more than 25 years, ending February 1984. The parties stipulated at the hearing before the ALJ as to the length of employment, although there is ample evidence to support the conclusion that the claimant worked as a miner for a substantially longer period. The responsible operator in this case is the respondent Island Creek Coal Company, for which the miner last worked on February 19, 1970. The designation of Island Creek as responsible operator is appropriate because it is the last coal company for which the claimant worked for a cumulative period of at least one year. See 20 C.F.R. Sec. 725.493. When Mills left Island Creek in 1970, he went to work for the Department of Labor, where he worked as a coal mine inspector until 1984. Initially, this employment required Mills to enter the mines every day, but he later became a supervisor and was only required to enter the mines three days a week. The miner retired from this position in 1984, when he was determined to be disabled by the Department of Labor and given disability retirement benefits.
 
 
 3
 The claimant filed his claim for black lung benefits on January 15, 1981, and the Department of Labor denied the claim on April 17, 1981. Mills requested a hearing, which was conducted before an ALJ on September 9, 1986. The ALJ issued a decision and order denying benefits on November 25, 1987, and the Board affirmed this denial in an order dated April 28, 1989. This timely appeal followed.
 
 II.
 
 4
 Our scope of review in this case is quite limited. We may not engage in a de novo review of the evidence, and we may not second guess the credibility findings of the ALJ. We must affirm the decision of the ALJ if it is supported by substantial evidence and in accordance with applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). Since this claim was filed on January 15, 1981, its determination is governed by the new permanent regulations, which are set forth at 20 C.F.R. Part 718. Knuckles v. Director, Office of Workers' Compensation Programs, 869 F.2d 996 (6th Cir.1989); 20 C.F.R. Sec. 718.2.
 
 
 5
 We note at the outset that the claimant has filed new medical evidence with his pro se brief. Because our scope of review is limited to an inquiry into whether the ALJ's decision was supported by substantial evidence, and because we may not embark upon factfinding at this level, we decline to consider the new reports that the claimant has proffered. To have this new medical evidence considered, the claimant must file a new claim for benefits. 20 C.F.R. Sec. 725.309.
 
 
 6
 Under Part 718, the claimant may establish the presence of pneumoconiosis by a qualifying chest x-ray, reports of biopsy or autopsy procedures, the application of certain presumptions, or by a reasoned medical opinion. 20 C.F.R. Sec. 718.202. In this case, the ALJ considered the x-ray evidence, other medical tests, and the various medical opinions that were available.
 
 
 7
 A total of sixteen x-ray interpretations were made a part of the record. Of these, six are positive for the existence of pneumoconiosis, nine are negative, and one is unreadable. The ALJ properly considered the qualifications of the radiologists who evaluated the various x-rays. 20 C.F.R. Sec. 718.202(a)(1). Consequently, the ALJ gave the most weight to the interpretations that were made by certified "B-readers." See 20 C.F.R. Sec. 718.202(a)(1)(ii)(E); see also Back v. Director, Office of Workers' Compensation Programs, 796 F.2d 169 (6th Cir.1986). Because of the progressive nature of black lung disease, the ALJ also accorded more weight to the most recent x-ray, dated March 22, 1984. Applying these principles, the ALJ reasoned that a finding of pneumoconiosis pursuant to 20 C.F.R. Sec. 718.202(a)(1) was not warranted. We agree with the ALJ's conclusion. Six of the nine negative x-ray readings were made by B-readers, and the March 22, 1984, x-ray was also negative for the existence of pneumoconiosis.
 
 
 8
 No autopsy or biopsy evidence is found in the record. For this reason, the ALJ properly determined that the claimant failed to establish the existence of pneumoconiosis pursuant to 20 C.F.R. Sec. 718.202(a)(1).
 
 
 9
 Having made these findings, the ALJ then proceeded to an evaluation of whether the claimant could establish the existence of pneumoconiosis pursuant to any of the presumptions available in 20 C.F.R. Secs. 718.304, 718.305, or 718.306. See 20 C.F.R. Sec. 718.202(a)(3). Because the claimant is still alive and because he cannot establish complicated pneumoconiosis by medical evidence, he is not entitled to the presumptions outlined in sections 718.304 or 718.306.
 
 
 10
 The presumption provided for in 20 C.F.R. Sec. 718.305 is available when a miner was employed in underground coal mining for at least fifteen years, if the miner can establish the presence of a totally disabling respiratory or pulmonary impairment. Upon a review of the medical evidence and opinions, the ALJ concluded that the claimant was not entitled to rely upon the presumption contained in 20 C.F.R. Sec. 718.305.
 
 
 11
 The ALJ's conclusion was supported by substantial evidence. Three pulmonary function studies and five arterial blood gas tests were administered to the claimant, but none of these tests were qualifying within the meaning of 20 C.F.R. Part 718, Appendices B and C.
 
 
 12
 Numerous medical opinions also are included in the record, but the weight of medical opinions supports the conclusion that the miner is not totally disabled from a pulmonary or respiratory standpoint. Dr. Valentino Simpao examined the claimant on March 6, 1981, and he administered various clinical tests. He concluded that the claimant suffered from pulmonary fibrosis with chronic bronchitis, and stated that the miner's condition "could be attributed to his previous job as a coal miner." However, he concluded that the miner's degree of disability was mild to moderate.
 
 
 13
 A pulmonary specialist, Dr. Frank H. Taylor, examined the claimant once in 1981, twice in 1983, and once again in February 1984. At the time of the 1981 examination, Dr. Taylor diagnosed early pneumoconiosis, but he opined that the claimant would be able to perform his usual coal mine employment. He based this diagnosis on an x-ray, pulmonary function and blood gas studies, and a physical examination. The two 1983 examinations took place after the claimant suffered a heart attack, and Dr. Taylor was unable to determine whether his symptoms were the result of his lung problems or his heart problems. He did not order new diagnostic tests at this time.
 
 
 14
 At the request of the claimant, Dr. Taylor wrote a letter in 1984 recommending that the claimant no longer enter the mines. This letter did not, however, indicate that the claimant was disabled because of coal workers' pneumoconiosis. At his deposition in 1986, Dr. Taylor expressed his opinion that the claimant's pulmonary problems, standing alone, would not prevent him from performing his job as a coal mine inspector.
 
 
 15
 Two pulmonary specialists and B-readers, Drs. Zaldivar and Renn, made detailed examinations of all of the clinical evidence and medical opinions and concluded that the claimant did not suffer from black lung disease. According to their analyses, the claimant was not disabled from a pulmonary standpoint. Drs. Zaldivar and Renn did not examine the claimant in person.
 
 
 16
 The claimant suffered a severe myocardial infarction in 1983, which left him with severe cardiac impairments. At the time of his heart attack, the miner was diagnosed as having arteriosclerotic heart disease, chronic interstitial lung disease, and hypertension. According to Drs. Zaldivar and Renn, the claimant's interstitial lung disease resulted from increased fluid in the vascular system and from busulfan, a medication. They opined that the disease was not pneumoconiosis.
 
 
 17
 Two physicians, Dr. Calhoun and Dr. Johnson, rendered opinions that the miner suffered from totally disabling coal miner's pneumoconiosis. Although they both examined the claimant personally, their conclusions were not supported by clinical evidence. For example, Dr. Calhoun interpreted the chest x-ray that he ordered as indicating that the claimant had "category III/III, type PT ILO" pneumoconiosis. Dr. Payne, a B-reader, interpreted the same x-ray as indicating "Category I/I, type s/t" pneumoconiosis, and included this conclusion in a report he submitted to Dr. Calhoun. Pulmonary function studies were also administered to the claimant at Dr. Calhoun's request, but the claimant was unable to perform the tests satisfactorily because of his shortness of breath. Dr. Calhoun predicted that the arterial blood gas studies that he ordered would indicate that the claimant's p02 would be reduced, but the tests, in fact, revealed normal results. Dr. Johnson's opinion merely states that the claimant is disabled from black lung disease. He offers no clinical basis for this opinion.
 
 
 18
 The ALJ acted within his province when he credited the opinions of Dr. Zaldivar and Dr. Renn but rejected those of Dr. Calhoun and Dr. Johnson. Although Dr. Calhoun and Dr. Johnson were treating physicians, their opinions were not based upon clinical findings. As we stated in Neace v. Director, Office of Workers' Compensation Programs, 867 F.2d 264 (6th Cir.1989), "[i]n order to constitute substantial evidence of disability under the Act, the [medical] opinion must ... be supported by the clinical evidence." Id. at 268.
 
 
 19
 Notwithstanding the fact that the claimant was unable to avail himself of the benefit of any of the presumptions set forth in the regulations, the ALJ concluded that the evidence did establish the existence of pneumoconiosis. According to 20 C.F.R. Sec. 718.202(a)(4), such a determination may be made if "a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers ... from pneumoconiosis as defined in Sec. 718.201. Any such finding shall be based on objective medical evidence ... [and] shall be supported by a reasoned medical opinion." The ALJ based this finding on the opinions of Drs. Taylor, Simpao, and Calhoun. He also noted that the claimant does not have a history of smoking.
 
 
 20
 Having so concluded, the ALJ proceeded to a determination of whether the claimant was totally disabled. 20 C.F.R. Sec. 718.204. We find that his conclusion that the claimant was not disabled is supported by substantial evidence. None of the objective medical data supports a conclusion of total disability, and the clear weight of medical opinion indicates that the miner is capable of performing his usual or comparable coal mine employment.
 
 
 21
 AFFIRMED.
 
 
 
 *
 Honorable Paul V. Gadola, United States District Court for the Eastern District of Michigan, sitting by designation